# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**IBERIABANK, a Louisiana banking**
**corporation, as successor in interest to**
**Century Bank, FSB,**

      **Plaintiff,**

**v.**                                **Case No.  8:12-cv-2872-T-30MAP**

**DAER HOLDINGS, LLC, a Florida**
**corporation, et al.,**

      **Defendants.**
_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiff Iberiabank's Dispositive Motion for Summary Judgment (Dkt. 112), Defendant Avila Property Owners Association, Inc.'s Response in Opposition (Dkt. 142), and Defendants Daer Holdings, LLC and Michael Peters' Response in Opposition (Dkt. 147).  The Court, having reviewed the motion, responses, record evidence, and being otherwise advised in the premises, concludes that Plaintiff's motion should be granted and summary judgment entered in its favor.

## <u>BACKGROUND</u>

### I.     Summary

This foreclosure action was removed by Defendant United States of America on December 20, 2012 (Dkt. 1).  The subject real property is a 38,000 square foot mansion known as the Villarreal Mansion located at 16229 Villarreal, De Avila, Tampa, Florida 33613.  Plaintiff Iberiabank seeks to foreclose its mortgage liens and security interests. Iberiabank filed the instant motion for summary judgment on its foreclosure action.

Subsequently, Iberiabank and Defendant United States of America reached a settlement. Accordingly, United States of America does not oppose the instant motion. Defendants DAER Holdings, LLC, Michael Peters, and Avila Property Owners Association, Inc. filed responses in opposition.

The Court concludes that summary judgment in Iberiabank's favor is warranted. Daer and Peters assert arguments and defenses that are barred by collateral estoppel and the *D'oench Dhume* doctrine. *See generally D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447 (1942). Also, Avila Property's claim against Iberiabank for past due assessments is premature at this time.

## II.     The Villarreal Mansion's Ownership

Defendants Terri L. Steffen and her husband, Paul Bilzerian (or their family), occupied the Villarreal Mansion for many years, through multiple bankruptcies and title transfers. Defendant DAER Holdings, LLC currently holds legal title to the Villarreal Mansion. Specifically, in late 2006, the Tampa bankruptcy court approved a public Section 363 sale of the Villarreal Mansion in the chapter 11 proceeding titled *In re Guerrini Family Limited Partnership, LLP*, Case No. 8:06-bk-05383-MGW. DAER had the highest bid at the Section 363 sale. DAER financed its purchase with a $5.5 million first mortgage loan from Century Bank. That loan was evidenced by a full set of loan documents that included a promissory note signed by DAER and Peters and a duly recorded mortgage granting Century Bank a first mortgage lien. The first mortgage lien was recorded in the public records on December 28, 2006.

On March 28, 2008, Century Bank issued a $750,000 second mortgage loan to DAER to pay expenses associated with the Villarreal Mansion. That loan is evidenced by another full set of loan documents that included a promissory note signed by DAER, an unconditional

guaranty signed by Peters, a duly recorded mortgage granting Century Bank a second mortgage lien, a security agreement granting a security interest in the furnishings of the Villarreal Mansion, and an assignment of rents. The second mortgage lien was recorded in the public records on April 3, 2008.

DAER and Peters failed to make the loan payments due September 28, 2009, and October 1, 2009, and they have made no further loan payments.

## III.    Iberiabank's Acquisition of the Two Loans and Subsequent Foreclosure Action

In November 2009, the State of Florida Office of Thrift Supervision closed Century Bank and the FDIC-R took control as its receiver. On November 13, 2009, Iberiabank and the FDIC-R entered into a Purchase and Assumption Agreement, whereby Iberiabank purchased the first and second loan documents. On or about March 29, 2010, and May 19, 2010, respectively, Iberiabank accepted assignments of the loan documents.

On July 20, 2010, Iberiabank accelerated both loans under the terms of the loan documents. In September 2010, Iberiabank filed the instant action in Florida state court to foreclose its mortgage liens and security interests. In 2012, Iberiabank joined the United States of America, Steffen, Bilzerian, and the Bankruptcy Trustee as Defendants to the amended foreclosure complaint. On December 20, 2012, the United States of America removed the action to this Court.

## IV.    The Steffen Bankruptcy Action and the Subsequent Adversary Proceeding

Since 2001, Steffen has been a debtor in a bankruptcy pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, Case No. 8:01-bk-09988 (the "Bankruptcy Action"). In 2007, after DAER obtained title to the Villarreal Mansion, the court in the Bankruptcy Action converted Steffen's Chapter 11 case to a Chapter 7 case and Menchise became her Chapter 7 trustee.

In 2009, Menchise commenced an adversary proceeding in the Bankruptcy Action, Adv. No. 09-ap-00093 (the "Adversary Proceeding"). Menchise sought to avoid various transfers involving the Villarreal Mansion on the grounds that DAER was Steffen's alter ego or nominee and thus the Villarreal Mansion was, during all relevant times, property of Steffen's bankruptcy estate. Iberiabank, Menchise, DAER, Steffen, Bilzerian, and the United States of America were parties to the Adversary Proceeding.

One of the issues raised in the Adversary Proceeding was whether "Century Bank recorded its mortgage lien in violation of the automatic stay" and whether "for a variety [of] reasons Century Bank knew or should have known that the Villarreal Mansion was property of the Debtor's estate." The court concluded that, under the *D'Oench Dhume* doctrine, the FDIC's "interest in an asset it acquired from a failed bank could not be diminished by alleged 'agreements' not disclosed in the failed bank's records." (Dkt. 128-7).

Iberiabank argues that the final judgment in the Adversary Proceeding collaterally estops Defendants from asserting the same defenses in this action.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *See id.* Throughout this analysis, the court must

examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *See id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *See Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *See Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *See Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial."  *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990).  However, there must exist a conflict in substantial evidence to pose a jury question.  *See Verbraeken v. Westinghouse Elec. Corp*., 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

I. **Iberiabank Is Entitled to Summary Judgment on DAER and Peters' Affirmative Defense of Unclean Hands**

Daer and Peters assert the same affirmative defense of "unclean hands."  Specifically, they allege that: (a) Century Bank rescinded its authorization for DAER to draw upon an account set up under the second mortgage that was to fund the operations of the Villarreal Mansion; (b) Century Bank wrongfully accused certain DAER representatives, including

Peters, of fraudulent behavior and issuing fraudulent checks; (c) Iberiabank was on notice

of these allegations because, on March 26, 2010,  DAER's counsel advised Iberiabank that

the issue of the validity of the loans was being litigated in the Thirteenth Judicial Circuit in

and for Hillsborough County, Florida; and (d) but for Century Bank's fraudulent conduct,

DAER would not have defaulted on the subject loans and would have been able to continue

to service the debt until an acceptable buyer was located.

Iberiabank is entitled to summary judgment on DAER and Peters' defense because

the facts are undisputed that the unclean hands' defense is barred by collateral estoppel and

the *D'oench Dhume* doctrine.

### A.    Collateral Estoppel

The  doctrine  of  collateral  estoppel,  also  referred  to  as  issue  preclusion,  bars  the

relitigation of issues that previously have been litigated and decided.  *See Irvin v. U.S.,* 335

Fed. Appx. 821, 822-23 (11th Cir. 2009); *Christo v. Padgett,* 223 F.3d 1324, 1339 (11th Cir.

2000).  To apply collateral estoppel, the following elements must be present: "(1) the issue

at stake is identical to the one involved in the prior proceeding; (2) the issue was actually

litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must

have been 'a critical and necessary part' of the judgment in the first action; and (4) the party

against whom collateral estoppel is asserted must have had a full and fair opportunity to

litigate the issue in the prior proceeding."  *See Christo,* 223 F.3d at 1339 (quoting *Pleming*

*v. Universal-Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir. 1998)).

The  bankruptcy  court  concluded  in  the  Adversary  Proceeding  that  the  *D'Oench*

*Dhume* doctrine applied with respect to DAER's defense that Century Bank fraudulently

rescinded the agreement between DAER and Century Bank that permitted DAER to draw upon an account to fund the Villarreal Mansion's operations because the agreement was never disclosed to the FDIC.

DAER's defense in this case relates to the same facts of an alleged agreement between DAER and Century Bank regarding DAER's right to draw funds from a separate account to fund the Villarreal Mansion's operations prior to finding an appropriate buyer for the property. Accordingly, collateral estoppel applies because DAER was a party to the Adversary Proceeding and the defense was fully and fairly litigated in the Adversary Proceeding.

### B.    The *D'Oench Dhume* Doctrine

Although Peters was not a party to the Adversary Proceeding, the *D'Oench Dhume* doctrine bars his defense of unclean hands for the same reasons that the bankruptcy court rejected the like defense of DAER.

The Eleventh Circuit recently summarized the *D'Oench Dhume* doctrine as follows:

> In *D'Oench,* the Supreme Court opined that "in litigation between a bank customer and the FDIC, as successor in interest to a bank, the customer may not rely on agreements outside the documents contained in the bank's records to defeat a claim of the FDIC." *Baumann v. Savers Fed. Sav. & Loan Ass'n,* 934 F.2d 1506, 1514-15 (11th Cir. 1991) (citing *D'Oench,* 315 U.S. at 459, 62 S.Ct. at 680). The *D'Oench* case generated the so-called *D'Oench* Doctrine, which is simply a rule that:

>> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records. *Id.* at 1515.

*Lindley v. FDIC,* 733 F.3d 1043, 1051-52 (11th Cir. 2013).

The *D'Oench Dhume* doctrine is codified at 12 U.S.C. § 1823(e), which provides, in

relevant part:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... shall be valid against the [FDIC] unless such agreement-
>
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

"Section 1823(e) gets additional strength from § 1821(d)(9)(A) which provides, in

part, that 'any agreement which does not meet the requirements set forth in section 1823(e)

... shall not form the basis of, or substantially comprise, a claim against the [FDIC].'"

*Lindley,* 733 F.3d at 1052 (alterations in original).  Notably, a successor institution like

Iberiabank in the instant case is entitled to the same protection. *See First Union Nat'l Bank*

*of Fla. v. Hall,* 123 F.3d 1374, 1379 (11th Cir. 1997).

The record is undisputed that Century Bank's inequitable conduct occurred before it

was closed and taken over by the FDIC and before the FDIC sold the loan documents for

both mortgages to Iberiabank.  It is also undisputed that the alleged agreement to permit

DAER to draw upon an account set up under the second mortgage was not documented in

the loan documents or in Century Bank's loan committee or board minutes.  Accordingly, as an assignee of the FDIC, Iberiabank is protected from Peters' claim of unclean hands because the facts Peters relies upon do not arise from fully executed and properly documented contracts in Century Bank's files and records.

Peters' argument that his defense of unclean hands amounts to a free standing tort, an exception to the *D'Oench Dhume* doctrine and section 1823(e), is without merit.  *See Lindley,* 733 F.3d at 1052 (discussing the "narrow exception" of a free standing tort claim and noting that "a tort claim is not free standing if it is 'sufficiently intertwined with regular banking transactions, such that exclusion of the alleged secret agreement accords with the underlying policies of *D'Oench*.'").

Accordingly, Iberiabank is entitled to summary judgment on DAER and Peters' defense of unclean hands.

## II.   Avila Property's Claim for Past Due Assessments Is Premature

Avila Property contends that Iberiabank is responsible for unpaid assessments and costs under Fla. Stat. § 720.3085.  Iberiabank takes the position that it is not responsible for these assessments because Avila Property's Declaration of Covenants, Restricts and Assessments for Avila Subdivision (the "Declaration"), recorded in the public records on April 9, 1979, provides, in relevant part that "the lien [for unpaid assessments and costs] shall be superior to all other liens and encumbrances on the lot except liens of ad valorem taxes and mortgages held by recognized lending institutions."  (Dkt. 142 at Ex. A).  The Court need not address this dispute because the issue of who is responsible for unpaid assessments

is premature.  *See* section 720.3085(2007); *LR5A-JV, LP v. Little House, LLC*, 998 So. 2d

1173, 1175 (Fla. 5th DCA 2008).

Section 720.3085(2)(2007) states, in relevant part:

> A parcel owner is jointly and severally liable with the previous parcel owner
> for all unpaid assessments that came due up to the time of transfer of title. This
> liability is without prejudice to any right the present parcel owner may have
> to recover any amounts paid by the present owner from the previous owner.

The record is undisputed that Iberiabank is not the "parcel owner" of the Villarreal Mansion.

Indeed, at this point, Iberiabank is a creditor.  Thus, any claim for assessments against

Iberiabank is premature.  *See LR5A-JV, LP*, 998 So. 2d at 1175.  In *LR5A-JV*, the court

explained this rationale as follows:

> The Association argues that section 720.3085(2), Florida Statutes, grants its
> lien priority over any other lien because it holds the current and previous
> parcel owners jointly and severally liable for unpaid assessments.  This
> argument is predicated on the first sentence of section 720.3085(2), Florida
> Statutes (2007), which states, "A parcel owner is jointly and severally liable
> with the previous owner for all unpaid assessments that came due up to the
> time of transfer of title."  The Association's argument is deficient because
> there is no record evidence that LR5A-JV purchased the property at public
> sale. Consequently, section 720.3085(2) is inapplicable because LR5A-JV is
> not the parcel owner; it is merely a creditor.  Furthermore, there is nothing in
> the plain language of section 720.3085 that can reasonably be construed to
> give the Association's lien priority over LR5A-JV's mortgage.  *The trial
> court's order of clarification correctly recognized that LR5A-JV is not the
> parcel owner and the Association may not seek relief in the foreclosure action.*

*Id.* (emphasis added).  Like the Association in *LR5A-JV*, Avila Property may not seek relief

for past due assessments and costs in this foreclosure action because Iberiabank is not the

parcel owner.  Avila Property will have to file a separate action for the past due assessments

and costs *after* the parcel owner is determined.

## III.     The Remaining Defendants

Steffen did not respond to Iberiabank's summary judgment motion.  However, the record is undisputed that any interest she may have in the Villarreal Mansion is subordinate to Iberiabank's mortgages.  The remaining Defendants did not respond to the summary judgment motion and there are no additional claims or defenses supported in the record that would prevent the entry of summary judgment in Iberiabank's favor.

It is therefore **ORDERED AND ADJUDGED** that:

1.    Plaintiff Iberiabank's Dispositive Motion for Summary Judgment (Dkt. 112) is granted for the reasons stated herein.

2.    Iberiabank shall file a proposed Foreclosure Judgment within fourteen (14) days of this Order.  The Foreclosure Judgment shall include the terms of Iberiabank's settlement with Defendant United States of America.  It shall also include language that Avila Property's claim for unpaid assessments and costs is preserved.

3.    The Court reserves jurisdiction on the issue of attorney's fees and costs.  Any motion for attorney's fees and costs shall be filed within thirty (30) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on January 30, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-2872.MSJ-grant-foreclosure.frm