UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IBERIABANK, a Louisiana banking
corporation, as successor in interest to
Century Bank, FSB

    Plaintiff,

v.                                       CASE NO.    8:12-CV-02872-T-30MAP

DAER HOLDINGS, LLC, et al.

    Defendants.

## FINAL SUMMARY JUDGMENT OF FORECLOSURE
## WITH SALE TO BE CONDUCTED BY A SPECIAL MASTER

THIS CASE came before the Court for consideration of Plaintiff's Motion for Entry of a Final Judgment of Foreclosure (Doc. 181), based upon the Order (Doc. 177) granting IBERIABANK's Dispositive Motion for Summary Judgment (Doc. 112) filed by Plaintiff, IBERIABANK ("IBERIABANK" or "Plaintiff") against Daer Holdings, LLC ("Daer"), Michael Peters ("Peters"), Orlando Lending Corp. ("Orlando Lending"), Nuccio Heating & Air Conditioning, Inc. ("Nuccio"), Avila Property Owners' Association, Inc. (the "HOA"), United States of America ("USA"), Terri L. Steffen (the "Debtor" or "Steffen"), Douglas N. Menchise, Chapter 7 Trustee of the bankruptcy estate of Terri L. Steffen (the "Trustee"), John Doe and Jane Doe (the "Occupants") (Daer, Peters, Orlando Lending, Nuccio, HOA, USA, Debtor, Trustee and Occupants are referred to collectively, as the "Defendants"), Plaintiff's Motion for Appointment of a Special Master to Conduct Foreclosure Sale (the "Motion to Appoint Special Master") (Doc. 179); and Plaintiff's Unopposed Motion to Extend Foreclosure Sale Date (Doc. 180). After considering the Motion for Summary Judgment and supporting and opposing responses to the

Motion for Summary Judgment, memoranda and affidavits, and the argument of counsel for the parties, the Court finds that there is no genuine issue as to any material fact and that Plaintiff is entitled to a judgment against each of the Defendants, as a matter of law.  The Court expressly determines that there is no just reason for delay and expressly directs the entry of a final summary judgment of foreclosure as sought in the Complaint, foreclosing the lien of the mortgages and security interests sued upon.

Accordingly, it is

ORDERED, ADJUDGED AND DIRECTED that:

1.      Due and legal service of process has been had upon the Defendants; that this Court has jurisdiction of the parties and the property and of the subject matter of this action pursuant to 28 U.S.C. § 1331.  Pursuant to 28 § 2410, USA is a named party to this civil action which seeks to foreclose a mortgage or other lien on real or personal property on which USA claims a lien, and which USA timely and properly removed to this Court pursuant to 28 U.S.C. § 1441.  The allegations contained in the amended complaint (the "Amended Complaint") (Doc. 4) have been proved by competent evidence and the Court has entered an Order (Doc. 177) granting IBERIABANK's Dispositive Motion for Summary Judgment (Doc. 112), and the equities in this case are with the Plaintiff.

2.      Plaintiff IBERIABANK, whose address is 200 West Congress Street, Lafayette, Louisiana 70501, and whose tax ID is 71-1280718, is the owner and holder of the first mortgage sued upon by the Plaintiff in this action and recorded on December 28, 2006, in Official Records Book 17280, at Page 1450, of the Public Records of Hillsborough County, Florida, which mortgage constitutes a valid first lien upon the real property all buildings, improvements and fixtures located thereon (the "Real Property") hereinafter described in paragraph 7, which liens are

superior to any interest of Defendants in such Real Property, and which mortgage is in default as alleged in the Amended Complaint.

3. Plaintiff is the owner and holder of the second mortgage sued upon by the Plaintiff in this action and recorded on April 3, 2008 in Official Records Book 18546, at Page 876 of the Public Records of Hillsborough County, Florida, which mortgage constitutes a valid second lien upon the Real Property, hereinafter described in paragraph 7, which lien is also superior to any interest of Defendants in such Real Property, and which mortgage is in default as alleged in the Amended Complaint.

4. Plaintiff is the owner and holder of a first lien security interest on certain personal property collateral by virtue of a security agreement sued upon by the Plaintiff in this action and the Uniform Commercial Code Financing Statement (the "Financing Statement") perfecting Plaintiff's security interest in the personal property collateral (the "Personal Property"), hereinafter described in Paragraph 8, which Financing Statement was filed on April 2, 2008 with the State of Florida Secured Transaction Registry as Doc. No. 200807994411; and the Financing Statement perfecting Plaintiff's security interest in the Personal Property was recorded on April 3, 2008, in Official Records Book 18546, at Page 890, of the Public Records of Hillsborough County, Florida. Plaintiff's security interest constitutes a valid and perfected first lien upon the Personal Property described on Paragraph 8, superior to any interest of the Defendants in such Personal Property, and which security agreement is in default as alleged in the Amended Complaint.

5. Plaintiff is the owner and the holder of a first lien Assignment and Pledge of Leases, Contracts, Rents and Profits (the "Assignment of Rents") sued upon by Plaintiff in this action, which was recorded on April 3, 2008, in the Official Records Books 18546, at Page 886, of the

Public Records of Hillsborough County, Florida, which security interest constitutes a valid first lien upon all of Daer's rents, issues, and profits, with respect to the Real Property, superior to any interest of the Defendants in such rents, issues and profits, and which Assignment of Rents is in default as alleged in the Amended Complaint.

6.  The following sums are due and owing to the Plaintiff by Defendants Daer and Peters, upon the notes, guaranty, and mortgages as sued upon:

A. THE FIRST LOAN DOCUMENTS

1. Principal on First Note — $5,500,000.00

2. Interest on First Note from (10/1/09 – 2/13/14) (interest rate at 7.875%) (per diem $1,203.125) ($1,203.125 x 1597 days) — $1,921,390.63

3. Real Property Taxes:

    (a) 2009: principal amount — $110,519.78

    (b) 2009: (from 8/4/10 through 2/13/14) (interest rate at 7.875%) (per diem $24.17620) ($24.17620 x 1290 days) — $31,187.30

    (c) 2010: principal amount — $92,602.45

    (d) 2010: (from 6/28/11 – 2/13/14) (interest rate at 7.875%) (per diem $20.25679) ($20.25679 x 962 days) — $19,487.04

    (e) 2011: principal amount — $80,142.42

    (f) 2011: (from 1/6/12 - 2/13/14) (interest rate at 7.875%) (per diem $17.53115) ($17.53115 x 770 days) — $13,498.99

    (g) 2012: principal amount — $78,905.63

    (h) 2012: (interest from 5/10/13 – 2/13/14) (interest rate at 7.875%) (per diem $17.26061) — $4,832.97

($17.26061 x 280 days)

| | |
|---|---:|
| (i) 2013: principal amount | $77,147.71 |
| (j) 2013: (interest from 11/13/13 – 2/13/14) (interest rate at 7.875%) (per diem $16,876.06) ($16,876,06 x 93 days) | $1,569.48 |

4. Forced Placed Insurance

| | |
|---|---:|
| (a) 2011: Principal Amount | $42,000.00 |
| (b) 2011 (interest from 5/12/11 through 2/13/13) (interest at 7.875%) (per diem $9.18750) ($9.18750 x 1009 days) | $9,270.19 |
| (c) 2012: Principal Amount | $91,241.06 |
| (d) 2012: (from 2/11/12 through 2/13/14) (interest at 7.875%); (per diem $19.95894) ($19,95894 x 734 days) | $14,649.87 |
| (e) 2013: Principal Amount | $47,775.00 |
| (f) 2013: (from 4/11/12 through 2/13/14) (interest at 7.875%); (per diem $10.45078) ($10.45078 x 674 days) | $7,043.83 |
| 5. Receiver fees, costs and expenses from 1/9/13 through 2/13/14 | $131,898.72 |
| 6. Late Charges | $370,648.57 |
| **TOTAL AMOUNT DUE UNDER FIRST LOAN DOCUMENTS** | **$8,645,811.64** |

B. SECOND LOAN DOCUMENTS:

| | |
|---|---:|
| 1. Principal on Second Note | $750,000.00 |
| 2. Interest on Second Note (9/28/09 through 2/13/13) (default interest rate at 7.875%) (Per Diem $164.06250) ($164.06250 x 1600 days) | $262,500.00 |
| 3. Late charges | $39,239.07 |
| **TOTAL AMOUNT DUE UNDER SECOND LOAN DOCUMENT** | **$1,051,739.07** |

| | |
|---|---|
| **TOTAL AMOUNT DUE UNDER FIRST LOAN DOCUMENTS AND SECOND LOAN DOCUMENTS** | **$9,697,550.71** |

Subject to amendment to include additional reasonable legal fees and costs, advances and costs, and such further sums as may be paid by the Plaintiff for publication and court costs, the above itemized sums are now due and owing to the Plaintiff by Defendants Daer and Peters, plus interest pursuant to 28 U.S.C. § 1961 (which provides interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week proceeding this judgment, and shall be compounded annually) and such interest rate is **.12%** from the date of this judgment until paid, and any further sums paid in connection with this suit.

7. The Plaintiff has a lien to secure the payment of the above itemized sums due on the First Loan Documents and the Second Loan Documents, as identified in paragraph 6, against Real Property located in Hillsborough County, Florida more particularly described as follows:

> Lots 19, 20 and 21, Block 5 of Avila Unit No. 5, according to the plat thereof as recorded in Plat Book 59, Page 44, of the Public Records of Hillsborough County, Florida.

8. The Plaintiff has a lien to secure the payment of the above itemized sums due under the Second Loan Documents, as identified in paragraph 6, against the Assignment of Rents and the Personal Property located at the Real Property identified in paragraph 7 above, more particularly described as follows:

### COLLATERAL DESCRIPTION

All machinery, apparatus, equipment, fittings, fixtures, whether actually or constructively attached to the real property described in paragraph 7 (hereinafter referred to as the "Property') and including all trade, domestic and ornamental fixtures and articles of personal property of every kind and nature whatsoever now

or hereafter located in, upon or under the Property now owned or hereafter acquired by Daer, including but not limited to all heating, air conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps, tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating and communications apparatus; boilers, ranges, furnaces, oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades, awnings; screens; storm doors and windows; stoves; wall beds; refrigerators, attached cabinets; partitions, ducts and compressors; rugs and carpets; draperies, furniture and furnishings; together with all building materials and equipment now or hereafter delivered to the Property and intended to be installed therein, including but not limited to lumber, plaster, cement, shingles, roofing, plumbing, fixtures, pipe, lath, wall board, cabinets, nails, sinks, toilets, furnaces, heaters, brick, tie, water heaters, screens, window frames, glass doors, flooring, paint, lighting fixtures and unattached refrigerating, cooking, heating and ventilating appliances and equipment and intangible property; together with all proceeds, additions and accessions thereto and replacements thereof, including after acquired property.

All of the water, sanitary and storm sewer systems now or hereafter owned by Daer which are now or hereafter located in, upon or under the Property, including but not limited to all water mains, service laterals, hydrants, valves and appurtenances, and all sanitary sewer lines, including mains, laterals, manholes and appurtenances.

All of Daer's rights, title and interest in and to the materials, soil, flowers, shrubs, crops, tree, timber and other emblements now or hereafter In, upon or under the Property.

All paving for streets, roads, walkways or entrance ways now or hereafter owned by Daer and which are now or hereafter located on the Property.

All of Daer 's interest as lessor in and to all leases or rental arrangements of the Property, or any part thereof, heretofore made and entered into, and in and to all leases or rental arrangements hereafter made and entered into by Daer during the life of the security agreements or any extension or renewal thereof, together with all rents and payments in lieu of rents, together with any and all guaranties of such leases or rental arrangements and including all present and future security deposits and advance rentals, and any and all assignments of rent with respect to the Property or any part thereof.

Any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise or the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of or decrease in the value of the Property described in paragraph 7.

All of Daer's right, title and interest in and to all unearned premiums accrued, accruing or to accrue under any and all insurance policies now or hereafter

provided pursuant to the terms of security agreements, and all proceeds or sums payable for the loss of or damage to (a) the Property described in paragraph 7, or (b) rents, revenues, income, profits or proceeds from leases, franchises, concessions or licenses of or on any part of the Property.

All contracts and contract rights of Daer arising from contracts entered into in connection with development, construction upon or operation of the Property, and all of Daer's right, title and interest in and to any and all governmental licenses, permits, approvals, allocations and similar matters and documents obtained or to be obtained in connection with said development, construction and operation of the Property.

All of Daer's right, title and interest in and to any trade names, names of businesses or fictitious names of any kind used in conjunction with the operation of any business or endeavor located on the real property described in paragraph 8.

All of Debtor's interest in all utility security deposits or bonds with respect to real property described in paragraph 7 or any part or parcel thereof.

9.      The liens, security interests, and mortgages of the Plaintiff is prior, paramount and superior to all rights, claims, liens, trusts, encumbrances and equities of Defendants and all persons, firms, parties or corporations, claiming by, through, under or against them. The Real Property, Personal Property, and Assignment of Rents shall be sold free and clear and discharged of any and all rights, claims, liens, trusts, encumbrances, and equities of Defendants, with the exception of any unpaid assessments that are found to be due pursuant to Section 720.3085, Florida Statutes, and all persons, firms, parties, entities or corporations claiming any interest in the Real Property, Personal Property, or Assignment of Rents, (collectively, the "Property") subsequent to the filing of the Lis Pendens in this case.  Pursuant to the Order, the HOA's claim for unpaid assessments and costs is preserved and the HOA will have to file a separate action for the past due assessments and costs after the Real Property owner is determined by the Special Master Deed as recorded in the public records of Hillsborough County, Florida.

10.     Unless the Defendant Daer, whose last known address is c/o Scott Rohleder, Manager, 2820 W. Fountain Blvd., Tampa, FL 33609,  and whose tax ID is 20-3265446, and/or

Defendant Peters, whose last known address is 3013 Geiger Court, Clearwater, FL 33763, and whose tax ID is XXX-XX-1925 shall at any time prior to the sale of the Property pay the Plaintiff, or attorneys for the Plaintiff, the sums specified in paragraph 6, and any other costs of this suit as mentioned in paragraph 6 including subsequently allowed reasonable legal fees and costs, and additional advances and costs, and such further sums allowed by this Court, then the Property shall be sold to the highest bidder for cash at public sale, free and clear of all estate, right, title, interest, claim, lien, encumbrance, remainder, reversion, homestead, dower and equity redemption whatsoever of the Defendant Daer, and all persons or entities claiming by, through or under Daer, and all persons or entities claiming any interest in the Property subsequent to the filing of the Notice of Lis Pendens herein.  Pursuant to the terms of the settlement between Plaintiff and USA, USA's rights to receive a portion of the proceeds paid by Daer to Plaintiff, or Plaintiff's related assignee for the Real Property, pursuant to this paragraph shall be determined by paragraph 15 herein and USA will not be barred by res judicata or other doctrine from enforcing its tax liens against Daer, or any other nominee of Steffen.

11.   A foreclosure sale of the Property shall be conducted by Robert Melsom (the "Special Master"), who is hereby appointed Special Master, to advertise for and conduct the foreclosure sale of the Property in this proceeding.  USA, pursuant to 28 U.S.C. § 2410(c), shall have 120 days from the date of this judgment, unless otherwise waived by USA in writing and filed with the court and recorded in the public records of Hillsborough County Florida, to exercise their right of redemption and pay the sums required by 28 U.S.C. §2410(d) and 26 U.S.C. §7425(d)(2).  Pursuant to 28 U.S.C. § 2002, notice of a scheduled foreclosure sale of the Property shall be published once a week for four weeks in a newspaper of general circulation in the county, state or judicial district where the Property is located, to the highest bidder for cash except Plaintiff

or its assignee may credit bid at the foreclosure sale of the Property the amounts set forth in paragraph 6.  Plaintiff or Plaintiff's attorney may also cancel the sale by filing a motion with the Court and must seek to reschedule the sale to a later date.  Plaintiff has requested that the foreclosure sale be scheduled at least six weeks after the entry of this judgment in order that Plaintiff may comply with the publication requirements of 28 U.S.C. § 2002.  The Special Master shall sell the Property at public foreclosure sale (a "Sale") on **April 2, 2014 at 11:00 a.m.** on the courthouse steps of the Sam M. Gibbons United States Courthouse located at 801 North Florida Avenue, Suite 555, Tampa, Florida 33602, in accordance with 28 U.S.C. §§ 2001 and 2002, and the Special Master shall promptly after the Sale, file with this Court a Certificate of Sale.

12. Plaintiff or its assignee shall have the right to assign this final judgment.  Plaintiff or its assignee shall have and is hereby given leave to bid at the Sale, and to apply against any bid made by it, the amount awarded in this Final Judgment.  In the event there is such an assignment, Plaintiff or its assignee shall file a Notice of Assignment of Foreclosure Judgment with the Court that identifies the assignee, and the Special Master shall recognize the assignee as the owner of this Final Judgment with a right to credit bid the amount awarded herein, without further order of this Court.  Plaintiff or its assignee shall also have the right to assign its successful bid at the foreclosure sale.  In the event there is such an assignment, Plaintiff or its assignee shall file a Notice of Assignment of Successful Bid with the Court that identifies the assignee, and the Special Master shall recognize the assignee as the owner of the successful bid and the party to be named in the Certificate of Title to be issued by the Special Master, without further order of this Court.  Pursuant to the term of settlement between Plaintiff and USA, USA's rights to receive a portion of the proceeds paid to Plaintiff or its related assignee from the assignment of this Final Judgment or the

assignment of its successful bid at the foreclosure sale, shall be determined in accordance with the provisions of Paragraph 15 herein.

13. If at the Sale the Property is sold to a third party (the "Third Party Purchaser"), who is not the Plaintiff or its assignee, the Third Party Purchaser shall immediately deposit with the Special Master certified funds equal to ten percent (10%) of the purchase price by 4:30 p.m. on the day of the Sale, and the balance of the purchase price shall be deposited with the Special Master in certified funds within 24 hours from the conclusion of the Sale. If the 10% deposit or balance of the purchase are not timely paid by the Third Party Purchaser to the Special Master, any money deposited is forfeited by the Third Party Purchaser and the Special Master shall accept the backup bid, if one exists, and shall issue an amended Certificate of Sale. Pursuant to the terms of the settlement between Plaintiff and USA, USA's rights to receive a portion of the proceeds paid to the Special Master by the Third Party Purchaser shall be determined in accordance with the provisions of Paragraph 15 herein.

14. The Sale of the Property shall not take place unless a representative of Plaintiff or its assignee is present at the sale. If Plaintiff or its assignee's representative is not present at the Sale, the Special Master shall forthwith cancel the Sale. Plaintiff or its assignee shall thereafter secure a new sale date by a Motion to Cancel and Reschedule the Foreclosure Sale. If the sale does take place without Plaintiff or its assignee's representative being present, the Sale shall be null and void and title to the Property shall not pass to the purchaser at said sale.

15. The proceeds derived from the Sale of the Property ordered sold herein shall first be paid to Plaintiff or its assignee to pay all sums due under or pursuant to this Final Judgment and the settlement agreement between Plaintiff and USA, including the Special Masters fees and

related expenses. If the Property shall sell for more than the aggregate total amount of all sums due to Plaintiff or its assignee, the Special Master shall report any surplus of Sale proceeds to this Court and shall hold the same until further order of this Court. Documentary stamp taxes, if the same are due, shall not be paid from the proceeds of the Sale but shall be paid by the purchaser of the Real Property prior to the recording of the Certificate of Title issued by the Special Master. In the event the amounts realized at the Sale are insufficient to pay the total of the several amounts ordered by this judgment to be paid, the Special Master shall report the deficiency to the Court for such further orders as the Court shall deem proper. Regardless of whether the amounts realized from the Sale are sufficient to pay all sums due Plaintiff, pursuant to the terms of the settlement between Plaintiff and USA, Plaintiff shall pay to USA an amount equal to the greater of $1,000,000 or 40% of the net proceeds from the Sale of the Real Property after payment of real estate commission of 5%, closing costs, Plaintiff's out of pocket expenses including legal fees, real estate taxes, insurance, receiver fees and expenses, and Special Master fees and expenses, which expenses and costs are subject to a cap of $1,600,000. Said amount will be paid when the Real Property is sold to an unrelated and independent third party or Plaintiff's mortgage is paid, either in whole or in part. Plaintiff shall promptly advice USA if surplus proceeds exist in order that it may serve a levy against the surplus to satisfy in whole or in part the tax liens at issue in this action.

16. Upon: (a) completion of the Sale; (b) the Special Master filing his report and Certificate of Sale; (c) the entry of an order confirming the Sale; (d) the execution and delivery of the Special Master's Deed or Certificate of Title conveying the Real Property described in paragraph 7; and (e) a Special Master's Bill of Sale conveying the Personal Property described in paragraph 8, the Sale shall stand confirmed and the Defendants and all persons claiming by, through or under them, since the filing of the Notice of Lis Pendens, with the exception of any

unpaid assessments found to be due pursuant to Section 720.3085, Florida Statutes, shall be forever barred and foreclosed of any estate or claim, equity or right of redemption in and to the Real Property. Further, the person(s) or entities named on the Special Master's Deed or Certificate of Title, and/or the Special Master Bill of Sale shall be let into possession of the Real Property and Personal Property, subject to the provisions of the Protecting Tenants At Foreclosure Act of 2009, which was extended until 12/13/14 by the Dodd-Frank Wall Street Reform and Consumer Protection Act.

17.   IF THE PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.  IF YOU ARE A SUBORDINATED LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, WHICH ARE NOT SUBJECT TO THE USA'S LEVY, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

18.   The Court retains jurisdiction of this action for no more than one (1) year from the date of this judgment for the purpose of making all further orders and judgments as may be necessary and proper.

19. The Clerk of Court is directed to close this case.

DONE AND ORDERED at Tampa, Florida on this 13th day of February, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies Furnished to:</u>
Counsel/Parties of Record

S:\Even\2012\12-cv-2872.foreclosureFJ.docx